JAMES FLYNN, Respondent, v. UNION BRIDGE COMPANY, *et al.;* ANDREW BAIRD, Appellant.

St. Louis Court of Appeals, December 9, 1890.

1. **Instructions:** SUPPLEMENTING ONE BY ANOTHER. If an instruction given for the plaintiff authorizes a finding for him upon an hypothesis, which omits a number of elements which are essential to the plaintiff's right of recovery, the instruction is erroneous ; and the error will not be obviated by an instruction properly given

| 42 | 529 |
|----|-----|
| 43 | 64  |
| 42 | 529 |
| 52 | 58  |
| 42 | 529 |
| 55 | 497 |
| 117m | 495 |
| 42 | 529 |
| 58 | 631 |
| 59 | 281 |
| 42 | 529 |
| 65 | 167 |
| 42 | 529 |
| 69 | 260 |
| 42 | 529 |
| 87 | 178 |

for the defendant, which requires proof of all the facts on which the plaintiff's right of action is predicated. These instructions are inconsistent, and, therefore, one cannot supplement the other.

2. **Master and Servant:** DEFECTIVE APPLIANCES. A servant worked on a scaffolding at a great height above a river, his support being a plank, on which he sat. This plank was knotty, but its condition in this respect was open to ordinary observation. and it had been exposed to the view of the servant for several days, while at work. There was evidence that it broke where it was knotty, and that the servant was thereby precipitated into the river below and suffered serious injury. There was also evidence that the knotty condition of the plank rendered it weaker than it would otherwise have been, but no other evidence that the plank was defective. *Held*, by a majority of the court ( ROMBAUER, J., *dissenting*), that the servant was entitled to a submission of the case to the jury, on the ground that it was the duty of the master to subject the plank to a sufficient test before placing the servant in a position of danger thereon.

3. ——— : ———. *Held, arguendo*, that a master is guilty of negligence in furnishing to the servant appliances with latent defects, which could have been discovered through the exercise of ordinary care, but he is not liable for injuries resulting from appliances having hidden defects, not discoverable through the exercise of great care. But for errors in the principle of construction of an appliance ( a scaffolding in this case ), or a want of knowledge of the strength of material, as determined by physical laws, the master may well be held responsible, on the ground that such principles and laws may be ascertained by care, and that it is the duty of the master to ascertain them.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*A. & J. F. Lee*, for appellant.

*Frank M. Estes*, for respondent.

ROMBAUER, P. J.—The master is not an insurer to the servant of the safety of appliances which he provides for his use, and, where the latter is injured by the use of defective appliances thus furnished, he must

show negligence on the part of the master, or else he cannot recover. Latent defects in such appliances are not ordinary risks of employment which the servant assumes, because he has a right to assume that the master, in his superior knowledge, has provided such instruments to carry on his business, as are reasonably safe, secure and sufficient for that purpose. But latent defects are such, as the master by the exercise of care might have discovered, and must not be confounded with hidden defects, which even great care on the part of the master would not disclose to him. To hold the master responsible for injuries resulting from hidden defects, as distinguished from latent defects, would in fact subject him to the liability of an insurer; yet, for errors in the principle of construction, or a want of knowledge of the strength of material, as determined by physical laws, the master may well be held responsible, on the ground that such principles and laws may be ascertained by care, and it is the duty of the master to ascertain them.

On the other hand, if the defects in the appliances are patent, that is to say, such as the servant would have discovered, if ordinarily observant, in using them, he becomes chargeable with knowledge of their defective condition, and, if injured thereby, cannot recover from the master. The principle on which he is debarred is not that of contributory negligence, although it is sometimes erroneously so classified, but a principle peculiar to the relation of master and servant, namely, that the servant continues to use the defective appliances, knowing the additional dangers likely to result therefrom, and, by so doing, voluntarily assumes that additional risk of employment. *Porter v. Railroad*, 71 Mo. 66; *Conroy v. Vulcan Iron Works*, 62 Mo. 35; *Condon v. Railroad*, 78 Mo. 567; *Siela v. Railroad*, 82 Mo. 435.

The law thus stated we are called upon to apply to the facts in the case at bar, as made by the plaintiff's evidence, for the purpose of determining, in the first

instance, whether the plaintiff by such evidence has
shown a *prima facie* right of recovery.

The plaintiff's evidence shows the following state
of facts: He was a bridge-builder by occupation, of
eleven years' experience, and, as such, was engaged in
the construction of more than one hundred bridges. He
was hired October 16, 1889, by the appellant, who was
contractor for the iron work of the Merchants' Bridge
across the Mississippi river at St. Louis, and went to
work on that day, and remained at work on such
bridge, almost without intermission, until January 31,
1890. For four days preceding the date of the accident,
the plaintiff was working with other men on a scaffold
at a great elevation above the river. The scaffold was
constructed of a number of two-inch planks, laid side
by side, and resting for support on other planks, which,
according to the evidence, were from eight to ten feet
apart. On January 31 this platform was lowered, and,
in assisting in that work, the plaintiff was required to
remove the planks and hand them to another workman.
When he had removed four of the planks, and while he
was sitting on the remaining plank, astraddle, holding a
keg of tools, the remainder of the platform was lowered,
and it had been lowered but a short distance, when the
plank on which he sat broke, precipitating him into
the river from an elevation of one hundred and thirty-
five feet, and causing him serious injuries, for which he
sues.

There was no evidence, on part of the plaintiff,
tending to show that the planks were not of sufficient
thickness to support the weight placed upon them, or
that they were of defective quality, or that the platform
was defectively constructed. There is evidence that the
plank was knotty, and that it broke at a place where it
was knotty. The plaintiff states repeatedly that the
plank was knotty, but declines to state that it was
defective on that account. The plank was exposed to
his view for several days while he was working on the

scaffold.   If it was defective on account of the knots,
the defect was one which a servant, ordinarily observant,
could easily have discovered.   If it was defective on
other accounts, the defect is not shown to be one which
either master or servant could have discovered by the use
of reasonable care.   But the plaintiff expressly states
that he thought the scaffold was good ; that he never
made any objection to the plank ; that it was good
material,—good, strong plank,—and his counsel in open
court declared that the plaintiff "did not make any
objections to the plank then, and does not now."

This being the plaintiff's evidence, I am inclined to
hold that the court should have declared at the close of
it, as requested by the appellant to do, that the plaintiff
could not recover; but my associates are of a different
opinion, and, therefore, this point must be ruled against
the defendant.

We all concur in the statement of the law, as con-
tained in the first part of this opinion.   We also all
concur in the proposition, that the servant has a right
to rely on the superior knowledge of the master as to the
fitness of appliances furnished to him for use.   Our dif-
ference is not one touching principles of law, but one
touching their proper application to the facts of the case.
My associates are of the opinion that, as there is some
evidence that planks which are knotty are weaker on
that account, it was the duty of the master, before plac-
ing his servant in a position of danger on a plank that
was knotty, to test the plank by subjecting it to the strain
of a weight at least equal, if not superior, to the weight
it was designed to bear.   Duty to my associates, as well
as myself, requires that I should state briefly why I
cannot concur in that view.

There is no evidence in the case that planks, which
are used for scaffolding, are in any case entirely free
from knots, nor is there any evidence that such planks
are, as a rule, subjected to such a test before they are
used ; nor is there any evidence that the plank used was

not of a thickness, soundness or quality, ordinarily used for scaffolding, irrespective of its elevation. To require, therefore, of the master that he should subject each plank to a strain test, before permitting it to be used, would be requiring of him not a reasonable care, but a care of a most extraordinary degree, to which the law does not subject him. Besides, the strain itself might injure the plank, and, instead of helping matters, make them worse. On the other hand, the evidence is clear that the servant's judgment and opportunities of observation were, in this case, equal, if not superior, to those of the master. He was a bridge-builder of eleven years' experience, walking on this plank daily, and if he did not know that it was entirely fit and safe, I cannot see how the master should be required to know it. If he knew that it was not entirely safe, common fairness demands that he should have called the attention of the master to that fact.

As *Condon v. Railroad*, 78 Mo. 567, is relied on by one of my associates, I will briefly refer to that case. There the servant, a brakeman, was injured by the giving way of a defective handhold of a ladder, precipitating him to the ground. On subsequent inspection it was found that the bolt, which fastened the handhold on one side was missing, and that that fact was the probable cause of the accident. The supreme court held that the following instruction, asked by the defendant, stated a correct proposition of law : The defendant "is not liable for an injury to plaintiff from a cause open to his observation, and that, if the evidence showed that his opportunities of observing and knowing the condition of the handhold were equal to, or superior to, those of defendant, he could not recover." The supreme court, however, further held that the proposition was not applicable to the facts, as the evidence clearly proved that the plaintiff went upon the car in question in discharge of his duty as a brakeman after dark, and there was no evidence to show that he had ever seen it before.

On the other hand, the evidence showed that the defendant had ample opportunities to thoroughly inspect the car at Kansas City, and should have done so.

The theory of the accident established by the appellant's evidence was different from that of the plaintiff in this. It tended to show that the plank, on which plaintiff was, did not break at all, but that, owing to a sudden jerk in the lowering of the platform, the plaintiff lost his balance, and fell into the river with another plank that he was trying to pass to his colaborer. This theory was supported not only by the testimony of eye-witnesses, but also by the further fact that a plank of the same material and thickness, but of an inferior quality, was, after the accident happened, subjected in the center, between supports eight feet apart, to a weight of thirteen hundred and sixty pounds before it broke, while it stands conceded that the plaintiff and the keg of tools were, together, less than one-fifth of that weight. The appellant's evidence also showed, without contradiction, that the lumber composing this scaffold was selected by a carpenter of forty years' experience; that he was ordered to select number 1 lumber, and did select such lumber, and that he could not perceive any defects in it, and that the lumber selected was such as is almost universally used in such structures.

This being in substance all the evidence, the court upon the request of the plaintiff gave the following instruction:

"The court instructs the jury that, if they believe and find from the evidence in this case that, on or about the thirty-first day of January, 1890, the plaintiff was in the employment of the defendant Baird, as a common laborer doing work on the St. Louis Merchants' Bridge in the city of St. Louis, and, while in the discharge of his duties and exercising ordinary care, he was precipitated from a scaffold, upon which he was engaged in his ordinary work, to a distance of forty-five feet to the bridge below, and badly injured; and if you find and

believe that the scaffold, upon which he was working, had been furnished to him by the defendant Baird, and that the said scaffold was not fit for the use to which it was put, and was unsafe and unsound by reason of the fact that a plank in use on said scaffold was defective and unsafe for use on said scaffold ; and that the plaintiff did not know of its defective and unsafe condition, and that the defendant Baird did know, or, by the exercise of ordinary care, could have known of its unsafe and defective condition, then you must find for the plaintiff.''

The defendant excepted to this instruction, and assigns for error that such exception was overruled.

The petition charges that the scaffold was defective, by reason of an imperfect and defective condition of a plank *which broke owing to such condition, resulting in injuries to plaintiff*. The plaintiff, therefore, could not recover, unless he did establish, to the satisfaction of the jury, both that the plank was defective, and that it broke owing to its defective condition, besides proving that the defendant knew, or, by the exercise of due care, might have known, of the defective condition of the plank. The instruction given on behalf of plaintiff omits every one of these requisites, and was, therefore, fatally defective and prejudicial to the defendants. It is true that the court, upon the request of the defendants, did give an instruction that the plaintiff could not recover, unless he proved all these facts ; but how can that aid the matter ? That instructions are to be taken as a whole and should be read together in construing their propriety is well settled ; but how can instructions be read together if they are irreconcilable and contradictory ? Here the jury are told in the instruction for the plaintiff that, if they find certain facts, they should find for the plaintiff, and are told in the defendants' instruction that they should not find for the plaintiff, even if they found all the facts stated in the plaintiff's instruction, unless they found some further fact detailed in the latter instruction. Inconsistent instructions are

always erroneous. (*Thomas v. Babb*, 45 Mo. 384 ; *Henschen v. O'Bannon*, 56 Mo. 289, 291 ; *Stevenson v. Hancock*, 72 Mo. 612); and "an instruction in itself erroneous cannot be so supplied ( that is, by one given in behalf of the other party ). One that gives but a part of a case may be, but there should be no contradiction." *Goetz v. Railroad*, 50 Mo. 472. A contradiction between two instructions, so far from correcting the evils of either, multiplies them in both. *State v. Nauert*, 2 Mo. App. 295.

If, in the case at bar, the plaintiff's instructions had stated correctly the law, as applicable to the facts under the pleadings, and the defendant's instructions would have stated it incorrectly, the error would not have been prejudicial to the defendant, because it would have been one in his favor. But the case is the reverse. The plaintiff's instruction predicates a recovery on a state of facts, which, under the pleadings and evidence, did not warrant a recovery. It is not the omission of hypothetical facts constituting an affirmative defense of the answer, but an omission of hypothetical facts forming the very gist of plaintiff's right of recovery, which is a fatal objection to the instruction. *Birtwhistle v. Woodward*, 95 Mo. 113.

Judgment reversed, and cause remanded. All concur.