(No. 1627, December 12, 1914)

HERBERT VAN KIRK, Plaintiff in Error, vs. E. C. BUTLER, Defendant in Error.

### SYLLABUS BY THE COURT.

1. It is the duty of the master to exercise reasonable care and skill to the end that the place where he requires his servant to perform labor shall be as reasonably safe as is compatible with its nature and surroundings.

P. 605

2. The master is chargeable with knowledge of defects in material or appliances, even though such defects be latent, or not plainly and clearly observable if by the exercise of reasonable care the master could have discovered the same.

P. 607

3. The servant assumes all the ordinary risks of the service and all of the extraordinary risks—i. e., those due to the master's negligence of which he knows and the dangers of which he appreciates.

P. 608

Error to District Court, Bernalillo County; Herbert F. Raynolds, Presiding Judge. Reversed and Remanded.

MARRON & WOOD, for plaintiff in error.

In reviewing judgment directed by court on opening of counsel every fact stated in complaint and opening and every fact which jury might have inferred therefrom is

deemed established in favor of plaintiff. 172 N. Y. 348; 80 Pac. 950; 245 Ill. 454; 76 N. J. 604; 101 Pac. 59.

A. B. McMillen, for defendant in error.

Plaintiff's complaint did not state facts sufficient to constitute cause of action against defendant. 91 Fed. 64; 132 Fed. 782; 162 Ind. 558; 50 Ill. App. 163; Deering on Neg. Sec. 196; 1 Shearman & Redfield on Neg. Sec. 184; 112 U. S. 377; 122 U. S. 189; 170 U. S. 665; 147 U. S. 238; 133 U. S. 375; 179 U. S. 663; 111 U. S. 313; 179 U. S. 658; 117 Fed. 122; 202 Fed. 799; 152 Fed. 937; 158 U. S. 964; 72 Ill. App. 77; 112 N. Y. Supp. 867; 54 Ill. App. 578; 166 Ind. 267; 133 Mo. 470; 31 App. D. C. 420; 126 Ill. App. 165; 160 Pac. 3; 128 Fed. 991; 129 Mass. 541.

## STATEMENT OF FACTS.

The complaint, in the case, sets up a claim for damages sustained by plaintiff when a portion of the defendant's building, upon which plaintiff was working, fell, causing the injuries complained of.

The cause of action is predicated upon the alleged negligence of the defendant, and the facts upon which this is based are set out in the complaint, in the following language:

"That the said fall of the building and the consequent injuries to this plaintiff were caused and produced by the carelessness and negligence of the defendant in failing to supply a safe place where this plaintiff was to work in that the support of timber which broke and precipitated the brick, timber, etc., upon this plaintiff was insufficient to stand the weight put upon the same and proper timber to support the roof and materials placed above the same."

The answer admitted that the plaintiff was working upon the building as an employee of the defendant and alleged that the plaintiff well knew the condition of the timbers which broke as a result of carelessness and neglect of plaintiff, who had failed to construct and place the supports of the roof in a workmanlike manner as directed to do by defendant's foreman in charge of that portion of the construction of the building.

The plaintiff made a general denial of these allegations and the cause came on for trial, upon the issues so joined.

After counsel for plaintiff had made his opening statement of the facts which he intended to prove, defendant's counsel moved for a directed verdict upon the statement of counsel for plaintiff, upon the ground that the facts offered to be shown demonstrated that an accident had occurred in the construction of a building for which the defendant was not responsible, the risk being an assumed one and that no fact of the opening statement would warrant a judgment in favor of the plaintiff.

Ruling upon this motion was withheld and after the introduction of some testimony, on behalf of plaintiff, counsel for defendant made further objection upon the ground that the complaint did not state a cause of action in that it stated no facts to show any negligence upon the part of the defendant. As a result of the argument upon this objection, counsel for plaintiff offered to re-state into the record the facts as he expected to prove them, which, with the consent of the trial court, he proceeded to do in the following language:

"The plaintiff expects to show in support of the action which he has set up substantially the following facts:

That the defendant, Mr. Butler, was the owner of a lot in the city of Albuquerque, upon which he designed to erect a building for an automobile garage; that he procured from an architect plans and specifications for the erection of this building, but did not employ the architect to superintend or supervise the construction, instead assuming that duty himself in person; that in pursuance of that erection he employed Mr. Dye, foreman, whose duty it was to employ and discharge his carpenters and other laborers necessary in the erection of the building, and Mr. Dye under that authority from the defendant, did employ this plaintiff as an ordinary carpenter to work in the erection of this building, to do the particular things that were assigned to him to do, in accordance with his business as a carpenter; that the plans and specifications of the architect provided for a building seventy-five feet in width and about one hundred and forty-two feet in length to be used

as an automobile garage and a portion of the interior work—there were to be trusses running cross-ways over this seventy-five feet and fifty feet of these trusses were to be self supporting, being supported in the remainder by iron standards or posts, located twenty-five feet from the west wall of the building; this fifty foot stretch of trusses that was self supporting, were to be sustained by iron truss rods, which passed through the wooden trusses at the posts and at the opposite wall, running down and being drawn tight with a screw, and supporting the wood truss at intervals by bridges running from the bottom of the truss to this rod and acting as supports. This cross truss—these cross trusses were all to be supported in this manner, except the last one at the rear, and as the plan of the building provided for an entrance at the rear left hand corner, in order to omit the posts under that cross piece which was to be located twenty-five feet from the wall, and provide a free passage way for the automobiles, where the posts stood, a support was designed under the last wooden truss or stringer, of another minor truss, running lengthwise of the building in the line of the iron supports, one end resting upon the iron supports under the truss, the second from the rear wall, and the other end being embedded in the rear wall itself. This was designed to pass under the first cross truss, supporting it at the same place that the iron support would have stood had it been placed. This cross truss taking the place of the iron support, was designed in its turn to be strengthened and supported by a like truss rod, fastened into each end of the wooden truss, running down in truss form and separating the wooden truss itself by bridges at intervals. I present a small diagram showing more definitely the arrangement designed for this building, the outline representing the walls of the building itself the last truss from which the iron standard was omitted being marked a-a, the point at which the iron standard was omitted marked d, and the wooden truss supporting it marked b-b. The rod designated to strengthen and hold it is marked e-e-e, and the bridge work running from this rod to the supports, marked f-f-f; the dotted line c-d being the place of the omitted iron support; we expect to show that the de-

fendant proceeded with the work of erecting this building
himself, personally superintending the work, and under him
the foreman being constantly upon the work directing it
and superintending it, and that his foreman, who was
under him, in entire charge of the work, and with the right
to hire and discharge men, directed the men in making
these cross-trusses to make them  supported on sticks or
pieces of two by six timber until they were completed and
ready for the iron rods, the cross trusses being made in place
and  the iron rods to be put in later, in the mean time the
timbers supported by the sticks, that in like manner the
foreman directed the wooden truss b-b on the diagram, to
be built of boards nailed together, composing when so nailed,
a stick of timber, approximately ten inches square, and di-
rected the carpenters to place under this stick of timber at
the point marked c-d, being the point directly under which
it supported the cross trusses, one of these stick supports,
which was to take temporarily the place of the rods there-
after to be added to the stick to support it, and some of
the carpenters so employed, the exact one we will be un-
able to show, placed the support at c-d under the stick
b-b.  We will show that as designed and had the rods been
put into this timber as soon as it was erected, it was amply
strong enough and would  have  sustained  fully all the
weight that was designed to and had been placed upon it at
the time that it fell.  We will further show that all these
upper trusses were in place, as I have stated, including the
cross-truss supporting the truss a-a; that the plaintiff to-
gether with the foreman and some other men proceeded to
put in these iron trusses commencing first at the trusses
a-a and proceeding from that one in the rear, the large
cross-trusses successively towards the front of the build-
ing; that in the mean time, by the direction of the defend-
ant, the work of putting the roof on top of these trusses
proceeded without interruption, and without waiting to
complete the works of putting in the iron trusses; that
when the plaintiff and the foreman had finished putting
the iron rod trusses  on  the  wooden  trusses  that run
through the building, and started back to put the truss on
the cross piece b-b, they were—that the foreman and the

plaintiff were called away and directed to stop that work by the defendant himself, and directed to instead complete some work in the front of the building—putting up the large heavy steel girder over the door in order that the work of construction should not be impeded; that the work of placing this heavy iron girder in the form occupied some days, two approximately, as I now recollect, and in the mean time the work of putting up the roof and piling additional weight upon the weak spot in the rear, continued by direction of the defendant unabated, and among other things that the defendant caused to be unloaded at the rear point directly over the place where this stick support sustained the iron rods, heavy green lumber, adding additional weight upon that point to that which the building itself carried. We will show that this stick support was insufficient in itself to sustain the weight placed upon it by the roof, and that after the plaintiff and the foreman had finished putting the steel girder in front, which work they had been doing by direction of the defendant himself, they started back to continue the work and put these iron rods under the support b-b and after they had put in a few pieces of the scaffolding designed for the workman to stand upon, and to work upon, in putting in this iron truss the stick c-d broke, and gave way, allowing the cross piece b-b and the stringer a-a resting upon it, in turn to break, and these turning over the various cross pieces that ran through the building from front to rear, so that the weight would come upon their side instead of upon the point of the support by the trusses, one after another they broke and fell until the entire top of the building had been precipitated into the basement; dragging with it some of the brick work of the wall and a portion of the walls themselves, substantially collapsing the entire building, with the exception of the lower part of the brick work upon the walls; that the plaintiff in the process of this fall was covered with bricks and debris that came from above, and in that manner received the injuries for which we bring this suit. His injuries consist of a broken arm, bruises and other physical injuries. Now upon that statement we expect to recover in this case."

After the foregoing statement of the case the court intimating that it was his conclusion that the complaint, even including the statement as made, did not state facts sufficient to constitute a cause of action, whereupon leave was asked by counsel for plaintiff to amend the complaint so as to state specifically the grounds or particulars of negligence contained in the opening statement.

The complaint was thereupon treated as amended to include the facts set out in the opening statement and a verdict directed in favor of the defendant upon the ground that plaintiff had no right of action.

## OPINION.

HANNA, J.—As indicated by the statement of facts the one proposition before this court for consideration is whether the complaint, as enlarged or amended by the opening statement of counsel for plaintiff states a cause of action.

Counsel for appellee, in an able brief, takes issue with appellant's position that the court ordered the complaint to be deemed amended to include the facts of the opening statement, and contends that an objection was interposed to such course of procedure.

Counsel did object and stated as his reason therefor that he desired to meet the complaint when amended and could not proceed further at the time because he desired to be prepared to meet whatever allegations should be made. After some discussion between counsel and the court it would appear that counsel for appellee, in effect, withdrew his objection, and, subsequently, upon request again made by counsel for appellant, leave to amend was granted by the court, to which no objection was interposed by appellee. It is, therefore necessary to treat the complaint as amended, by the opening statement of facts, as was done in the district court, any other course would be unfair to appellant as presenting an issue different from that upon which the case was decided in the court below.

We, therefore, turn to the main question for consideration, i. e. the existence of the relation of master and ser-

vant being conceded, is there a breach of duty set out in the complaint and statement of facts, resulting from the negligence of the defendant and not growing out of a risk assumed by the servant in the course of his employment, or, in short, has a cause of action been stated?

The appellant stands upon the general rule that it is the duty of the master to exercise reasonable care and skill to the end that the place where he requires his servant to perform labor shall be as reasonably safe as is compatible with its nature and surroundings. 4 Thompson Neg. Sec. 3873.

Appellee, while not questioning this general rule, and aside from his attack upon the sufficiency of the pleading, contends that a servant, engaging for the performance of specified services, takes upon himself the ordinary risks incident thereto, and that the general rule requiring a master to provide reasonably safe places and structures for his servants to work upon does not impose upon him the duty toward them of keeping a building which they are employed in erecting in a safe condition at every moment of the work, so far as its safety depends upon the due performance of that work by them and their fellows.

It has been held that the doctrine of reasonably safe place does not apply to the construction of buildings or other situations where the character of the place is constantly changing, with the same force as it does to the completed structure or other permanent and fixed place. Lewinn vs. Murphy, 63 Wash. 356. Other cases could be cited to the same effect, but it is well settled, as stated by Labatt's Master and Servant, Sec. 924, that where the instrumentality which caused the injury was still incomplete at the time of the accident, and the injured servant was engaged in the work of bringing it to completion, the question whether the master was in the exercise of due care is determined with reference to a lower standard than that which is applied in the case of instrumentalities which have been put into a finished condition and are in regular use in the normal course of business.

As stated by the same author, in the same section, in many cases the rule requiring the master to exercise ordin-

ary care to provide a reasonably safe place to work for his servant, is held not to apply to cases in which the work in which the servants are engaged is of such a nature that the conditions of the place are constantly changing.

This text is supported by the case of Davis vs. Trade Dollar Cons. Min. Co., 54 C. C. A. 636; 117 Fed. 122, among others, which case is cited by appellee in his brief, in support of his contention upon the proposition that plaintiff's complaint does not state facts sufficient to constitute a cause of action against the defendant.

The consideration of the last principle stated, ·without recognizing any qualification thereof, would seem to be conclusive upon the question before us for determination. Like so many other rules, however, the principle is not without its qualification. The theory of law upon which the principle is based, is that, as to the class of risks referred to, the risk is assumed by the servant upon the principle that it is an ordinary and natural incident of the work to be done. Labatt's Master and Servant, Sec. 1177.

Therefore, we take it to be a true statement of the law, that if the facts of the case should disclose that the risk is not of an ordinary kind, even though arising in the course of the construction of the building, but was of an extraordinary character, the rule as to assumption of risk by the servant should not apply. And in this connection we find Labatt's Master and Servant, at Section 1178, discussing the principle in the following language:

"A servant is prima facie not chargeable with an assumption of extraordinary risks—risks, that is to say which may be obviated by reasonable care on the master's part."

This, like every other element of the subject under consideration, seems to be be subject to still further qualification, and we find the same author, in Section 1179, declaring the principle that extraordinary risks are deemed to have been assumed by the servant if the risk was known to and comprehended by him.

A countless number of cases might be cited by us in support of these several legal principles enunciated. We have examined numerous authorities, and find that most

of the cases have arisen in connection with accidents resulting from improper methods of carrying on the business, or from negligence in respect to the use and management of instrumentalities or materials.

An extraordinary risk in the sense in which we use this term, is not one which is uncommon or unusual, in the sense that it is rare, but is one that arises out of unusual conditions, not resulting in the ordinary course of the business, as by reason of the master's negligence.

The reason why the doctrine of the servant's non-assumption of extraordinary risk has arisen, as an exception to the common law rule of assumed risk, or accepted risk, as it is designated by some authors, may be said to rest primarily upon the consideration that as the master has control of the conditions which affect the servant's safety, he is the party who ought in fairness to be held responsible if those conditions are not such as a prudent man would maintain under the circumstances. It is also said that extraordinary risks are not assumed because they are not the natural and ordinary incidents of the servant's work. Labatt's Master and Servant, Sec. 1181.

We, therefore, find that there are two classes of risks referred to, namely, ordinary and extraordinary risks, and Labatt's Master and Servant, Sec. 1186a, summarizes the rule as to the assumption of risk in the following language:

"The servant assumes all the ordinary risks of the service and all of the extraordinary risks—i. e., those due to the master's negligence—of which he knows and the dangers of which he appreciates."

This is a comprehensive statement of the rule which thus' qualifies the general rule that it is the duty of the master to provide a reasonably safe place for the servant to work.

Appellant by his statement of the case has sought to show that the condition out of which this injury grew was not an ordinary risk, but that the master personally in charge of the work, through his foreman, directed that the cross truss, which subsequently gave way, should be temporarily supported "on sticks or pieces of two by six timber until they were completed and ready for the iron rods";

that before the iron rods were installed, the work of putting on the roof proceeded, under direction of the defendant; that when the plaintiff and the foreman were about to put in the iron rods, or truss, to support the cross piece, (that gave way) they were called away from this work and directed by the defendent himself, to complete some work in the front of the building, which work occupied two days, in the meantime, under direction of the master, additional weight had been piled upon "the weak spot in the rear" and when the plaintiff returned to continue the work of reinforcing the truss, temporarily supported as aforesaid, and while erecting a scaffolding to stand upon for the purpose, the supporting timber, or "stick" broke, allowing the truss in turn to break and resulting in the collapse of the building and the injury of the plaintiff.

Thus appellant has endeavored to make out a case of negligence on the part of the master, who was defendant in the court below.

It may be urged that the master could not have foreseen the result that followed from his departure from the plans of construction which was but a temporary condition and that the defect in the construction, in this particular, was equally apparent to master and servant, and, therefore, assumed by the servant.

As heretofore stated, each case is dependent upon its facts and we have found it difficult to find analogous cases, although the following have some points in common with the present case, and, we believe, support the conclusion that the master is chargeable with knowledge of defects in material or appliances, even though such defects be latent, or not plainly and clearly observable, if by the exercise of reasonable care the master could have discovered same. Twomey vs. Swift, 163 Mass. 273, 39 N. E. 1018; Flynn vs. Union Bridge Co., 42 Mo. App. 531; Johnson vs. First Nat. Bank of Ashland, 79 Wis. 414; 24 Am. St. Rep. 722, 48 N. W. 712; Nat. Ref. Co. vs. Willis, 143, Fed. 107.

The last case cited is one where a scaffold broke and may be considered as similar in point of logic to the case under consideration. The scaffold proved of insufficient

strength, as did the truss which gave way under the load put upon it. The truss was designed by the plans to be reinforced by iron rods, but the master delayed the work of so doing and, it is said, directed the continuance of work upon the roof which resulted in piling up of weight upon the truss, temporarily supported, until it gave way.

On the other hand, could the master by the exercise of reasonable diligence have discovered the defect? It is apparent from the facts alleged that he knew that the trusses were to be reinforced by iron rods or trusses and that he stopped this work of reinforcing at the point where the trouble afterwards developed and at the same time permitted and directed the continuance of work which resulted in the extra weight over the unreinforced truss. This would not seem to be a case of defective material as was the case in the scaffold referred to, but rather a deliberate course of procedure, out of the ordinary and in violation of plans for the building with every reason to anticipate some such result as occurred. This would at least amount to carelessness and negligence, and constitute a violation of the general duty to provide a safe place for the servant to work in.

It is our conclusion that the state of facts here presented for our consideration did not constitute an ordinary risk, but rather an extraordinary one resulting from the negligence of the owner and master, and as the case is now presented to us, it does not appear that the servant knew of the condition and therefore assumed the risk, for which reasons we necessarily conclude that the trial court was in error in directing a verdict for the defendant, the judgment of the district court being, therefore, reversed, and the cause remanded for a new trial, and, IT IS SO ORDERED.