[No. 1693. April 7, 1917.]

# LEYBA v. ALBUQUERQUE & CERRILLOS COAL CO.

## SYLLABUS BY THE COURT.

1. It is the duty of the master to exercise reasonable care and skill to the end that the place where he requires his servant to perform labor shall be as reasonably safe as is compatible with its nature and surroundings.        ·        P. 462

2. The servant assumes all the ordinary risks of the service and all of the extraordinary risks. i. e., those due to the master's negligence, of which he knows and the dangers of which he appreciates.        P. 462

3. An "extraordinary risk" is not one which is uncommon or unusual in the sense that it is rare, but is one which arises out of unusual conditions not resulting in the ordinary course of business, as by reason of the master's negligence.        P. 462

4. When the evidence is of such a character that the proper inferences to be drawn from it as to the assumption of risk by the servant is a question with respect to which different opinions may not unreasonably be formed, it must be submitted to the jury under proper instructions from the court.
P. 464

Appeal from District Court, Santa Fe County County; E. C. Abbott, Judge.

Action by Juan B. Leyba against the Albuquerque & Cerrillos Coal Company. Judgment for defendant on a directed verdict, and plaintiff appeals. Reversed, and remanded for new trial.

CATRON & CATRON and REED HOLLOMAN of Santa Fe and E. E. STUDLEY of Raton for appellant.

The demurrer to the evidence admitted all the facts which the evidence tended to prove and all reasonable in-

ference therefrom.   The evidence submitted must be considered in its most favorable light in favor of the party against whom the demurrer is directed.

Richardson v. Swift & Company, 96 Fed. 699; Nyback v. Lumber Co., 90 Fed. 774; Parsons v. Louisville & N. R. Co., 118 S'. W. 101; Strong v. Railway Company, 120 N. W. 683; Merritt v. Matchett, 115 S. W. 1066.

Extraordinary risks are not assumed unless party knew the conditions and appreciated the danger arising therefrom.

Van Kirk v. Butler, 145 Pac. (N. M.) 129; Labatt's M. & S. Sec. 1178.

Whether risk was occasioned by the negligence of master and whether same and the danger thereof were known to plaintiff and appreciated by him is ordinarily a question for the jury.

Crawford v. Western Clay etc. Co., 151 Pac. (N. M.) 238; Galveston R. Co. v. Smith, 57 S'. W. 999; Bessex v. Railway Co., 45 Wis. 477; Babcock v. Railway Co. 150 Mass. 467; Snow v. Railroad Co., 90 Mass. 441; 'Johnson, Adm., v. Railway Co., 43' Minn. 53; Wedgwood v. Railway Co., 45 Wis. 44; Donahue v. Railroad, 178 Mass. 251; Pidcock v. Railway Co., 1 L. R. A. 131; Voorhees v. Railway Co., 44 Atl. 335; Newhart v. Railway Co., 52 N. W. 983; Labatt's M. & S., Sec. 962.

R. E. TWITCHELL, of Santa Fe for appellee.   W. H. KING of Salt Lake City of Counsel.

Where evidence offered in behalf of plaintiff shows assumption of risk it will defeat action whether defense is pleaded or not.

Iowa Gold M. Co. v. Diefenthaler, 76 Pac. 981; Schlereth v. Railroad, 96 Mo. 509; Epperson v. Postal Tel Co., 155 Mo. 372; Baker v. Barber Asphalt Co., 92 Fed. 121.

As to the doctrine of assumption of risk, see:
3 Labatt's M. & S'. (2d Ed.), Sec. 1168; Goodes v. B.

& A. Ry. Co., 162 Mass. 288, 38 N. E. 500; Murch v. Thos. Wilson's Sons & Co., 168 Mass. 408.

LaBatt, Vol. 4, p. 3693, and cases cited; Sweet v. Ohio Coal Company, 9 L. R. A. 861; Rogers v. Rd. Co., 76 Texas 502, 13 S. W. Rep. 540; Bailey, Mas. Inj. Serv.., pp. 180, 181; Watson v. Coal Company, 52 Mo. App. 366; Aldrich v. Furnace Co., 78 Mo. 599; Bailey's Master's Lia. Inj. Serv., p. 146; Stephenson v. Duncan, 73 Wis. 406, 41 N. W. 337; Gilbert v. Guild, 144 Mass. 601, 12 N. E. Rep. 368; Jenney Elec. Light & P. Co. v. Murphy, 115 Ind. 566, 18 . E. 30; Herdmann-Harrison Mill Co. v. Spehr, 145 Ill. 329, 33 N. E. 944; Hall v. C., B. & N. Rd. Co., 49 N. W. 239; Springside Coal Co. v. Patting, 71 N. E. Rep. 371; Deemers v. Marshall, 172 Mass. 548, 52 N. E. Rep. 1066; Detroit Oil Co. v. Grable, 94 Fed Rep. 73; Hathaway v. Atl. Steel Co., 155 Ind. 507; Huddleston v. Lowell Machine Shop, 106 Mass. 282; Bethlehem Iron Co. v. Weeiss, 100 Fed. 45; Seiter v. Winona Co., 75 N. W. Rep. 219; Welsh v. Brainerd, 65 N. W. Rep. 667; Pederson v. Rushford, 42 N. W. Rep. 1063; Pittsburg Co. v. Peterson, 35 N. W. Rep. 7; Watson v. Coal Co., 52 Mo. App. 366; Skidmore v. Virginia Co., 23 S. E. 713; Epperson v. Tel. Co., 155 Mo. 356; Olsen v. McMullen, 24 N. W. Rep. 318.

Sykes v. Packer, 99 Pa. 465; Railroad Co. v. Frawley, 100 Ind. 18, 9 N. E. 594; Hoard v. Blackstone Mfg. Co., 17 Mass. 60, 58 N. E. 180; Nealand v. L. & B. Ry. Co., 173 Mass. 42, 53 N. E. 137; Lord v. Pueblo S. & M. Co., 12 Colo. 390; Abbott v. McCadden, 81 Wis. 563.

### STATEMENT OF FACTS.

The appellant, plaintiff below, brought this action for damages on account of personal injuries, against the Albuquerque & Cerrillos Coal Company, a corporation, alleging that during the months of February, March, April and May, 1913, he was employed by the defendant company in the handling, running, dumping and operating of certain tram cars along the tramways of the said defend-

ant company, and that during the time referred to there
was a runway for the employes so engaged along and ad-
jacent to the said tramway which was about four feet
lower than the track of the tramway; that it was neces-
sary for such employes in the handling and moving of
the cars referred to, to insert a sprag between the spokes
of the wheels when seeking to retard the motion of said
cars, this being the only appliance or instrumentality fur-
nished by the said company with which to retard said
cars or to stop the same; that in May, 1913,
the plaintiff discontinued his employment with such
company, but, thereafter, on the 20th of December
of the same year, he was re-employed by the said com-
pany, and a few days later was reassigned to the same
work as that in which he had been formerly engaged by
the said company; that during the interval between his
first and second employment the defendant company had
caused changes to be made in the said runway by rais-
ing it to a level with the tramway, a portion of the new
runway being constructed of dirt and a portion thereof
of planking; that the portion so constructed of planking
was not constructed on a level with the portion constructed
of dirt, but was raised about three inches above the dirt
portion of the runway, leaving an impediment of an ab-
rupt, square-edge plank three inches high across said run-
way; that the said tram cars were being operated upon a
downgrade on said tramway by reason whereof it became
necessary to retard the motion of and to stop the said
tram cars by use of sprags, which are heavy sticks or poles,
which by an insertion between the spokes of the wheels
operate as blocks, causing the cars to stop when so ap-
plied; that when using these sprags in the stopping of
the cars it was necessary for the plaintiff to walk or run
along the runway parallel to and on a level with the tram-
way, and while moving at the same speed of the said tram
cars, and while watching the wheels of the car, to insert
the sprag and thus stop the car; that it was the duty of
the said defendant company to exercise reasonable care and
caution in furnishing its employes with a safe and suitable
place to work in performing their duties in operating and

spragging the cars, and that the method by which the plank part of said runway was constructed formed a dangerous obstruction and impediment to said employes, which was such as to cause the plaintiff to stumble and fall when he came in contact therewith; that the impediment was negilgently and carelessly constructed under the direction of the superintendent of said company and without reasonable care and caution, which said condition was at said time known to the said defendant company, whose attention had been called thereto, but that said company, through its superintendent, failed, neglected, and refused to change or repair the same but permitted the said runway to remain in such dangerous condition; that said plaintiff had not been on or along said runway since said plank portion had been constructed, prior to the time he was injured, and had no knowledge of the existence of said impediment and obstruction, and neither knew nor appreciated the risks to which he was subjected nor the dangerous condition of said runway.

Plaintiff further alleged that, while performing the duties for which he had been employed, upon reaching the end of the dirt runway he came in contact with the said obstruction, and, stumbling upon the same, lost his balance, and while so unbalanced the sprag turned with the wheel and struck the plaintiff in the leg, knocking plaintiff's leg out from under him and dragging his right leg under a tram car, with the result that his leg was crushed to such an extent that it had to be amputated.

Other allegations not necessary to be referred to are set out in the complaint, which concludes with a prayer for judgment.

The answer of the defendant company, so far as it is necessary for our consideration, set out that the method of retarding the tram cars on said tramway by means of sprags is safer than any brake or brake appliances with which said tram cars could be equipped and conforms to the usage prevailing among prudent and skillful employers engaged in the coal-mining business, and that the tram cars, the platform and runway, and any abrupt rise therein, if any there was, and the method of retarding

and stopping said tram cars by means of a sprag, were in plain view of the plaintiff when he entered the defendant's service, and so remained during all the time of his employment, and that, with full notice and knowledge of the construction, condition, and operation of the said tram cars, tramway, platform, and runway, and the method of retarding and stopping said tram cars, plaintiff voluntarily entered upon the work he was employed to do, which, among other things, was the retarding and stopping of said tram cars by means of said sprag while working upon said runway and platform, and continued therein up to and until the date of his alleged accident, without objection or complaint, and by similar allegations not necessary to more fully set out, the defendant, by its answer, pleads an assumption of risk on the part of the plaintiff, the answer further pleading contributory negligence.

It is not necessary to refer to the reply other than to state that it put in issue all new matter contained in defendant's answer.

At the conclusion of plaintiff's case the defendant moved for a directed verdict upon several grounds, the only one which this court is called upon to consider being that the evidence discloses that plaintiff had assumed the risk in entering the employment of the defendant company, and that therefore the defendant was not liable. The court sustained the motion, saying:

"The court holds that the plaintiff in assuming the employment assumed the risk of the employment."

From the judgment rendered upon the directed verdict, this appeal was prayed.

### OPINION OF THE COURT.

HANNA, C. J. (after stating the facts as above). The only question before this court for its determination is whether or not the injury in question grew out of conditions of such a character as justified the trial court in holding, as a matter of law, that the plaintiff assumed the risk and cannot recover the damages sought. We will there-

fore refer only to that portion of the evidence having to to with the condition out of which the injury grew, and we find from the record that, while the plaintiff had been employed in the mine in question for several months earlier in the year, that his employment had terminated, and that in the interim between his first and second employment the change in the runway where the accident occurred had been made. At the time of the injury he had been employed but two days in his work of spragging the cars of the defendant company, and he testified positively that he was injured at the place in question, and the evidence of other witnesses bears him out in this. There is some difference in the testimony as to whether or not the obstruction in the runway was two inches in height or six inches above the level of the earth adjacent thereto. The appellant testified that the planks were two inches above the level of the earth, while from the testimony of another witness it might be argued that the plank runway was about six inches above the level of the remaining portion of the runway. Whatever this fact may be, however, it appears from the evidence that the condition was recognized as a dangerous one to which the attention of the defendant had been called with the suggestion that the same be remedied, the superintendent of the defendant company, however, refusing to remedy the condition, stating that it was all right.

In this connection it is the contention of the appellee that the risk was patent ,and therefore assumed by the plaintiff, he being a man of experience in the work in which he was engaged; that, the condition being openly visible, he must be presumed to have noticed it. There might be some merit in this contention if the evidence was all one way upon this point, but the witness Newman was not certain as to the character of the obstruction. He said that it might be about six inches, while the other evidence upon this point indicates a less obvious condition.

It is shown by the evidence that a number of persons using the runway had stumbled over the same obstruction at different times. It is therefore clear from the evidence that the place, under the circumstances, was of a more

or less dangerous character, and that the attention of the employes of the defendant company had been called to this condition. The condition had not been long existing, but arose out of the change made in the runway which had been made a short time before the accident.

[**1, 2**]   In the case of Van Kirk, v. Butler, 19 N. M. 597, 145 Pac. 129, this court, after recognizing the general rule that it is the duty of the master to exercise reasonable care and skill to the end that the place where he requires his servant to perform labor shall be as reasonably safe as is compatible with its nature and surroundings, said:

"A servant, engaging for the performance of specified services, takes upon himself the ordinary risks incident thereto."

But, as we have pointed out in the opinion referred to, if the facts of the case should disclose that the risk is not of an ordinary kind, but of an extraordinary character, the rule as to the assumption of ordinary risk by the servant should not apply. Our conclusion there stated was that the servant assumes all the ordinary risks of the service and all of the extraordinary risks, i. e., those due to the master's negligence, of which he knows and the dangers of which he appreciates.

[**3**]   In defining an extraordinary risk in the opinion just referred to, we said that it is not one which is uncommon or unusual in the sense that it is rare, but is one which arises out of unusual conditions not resulting in the ordinary course of business, as by reason of the master's negligence. We further stated, and believe that the same reasoning applies to the case at bar, that:

"The reason why the doctrine of the servant's non-assumption of extraordinary risk has arisen, as an exception to the common-law rule of assumed risk, or accepted risk, as it is designated by some authors, may be said to rest primarily upon the consideration that, as the master has control of the conditions which affect the servant's safety, he is the party who ought in fairness to be held responsible if those conditions are not such as a prudent man would maintain under the circumstances. It is also said that extraordinary

risks are not assumed because they are not the natural and ordinary incidents of the servant's work."

Applying these principles of law, which this court has heretofore adopted, it would seem to be clear that a condition in the runway of the defendant's mine existed which was recognized to be a dangerous one and which employes had sought to have remedied, but which the superintendent of the defendant company had refused to correct.

The evidence discloses that the servants of the defendant company engaged in work such as the work of the plaintiff on the occasion of the injury were required to use this runway in their work, which was of such a character that they were not at all times able to observe the place where they were about to step, by reason of the fact that they were required to run alongside the tram cars with one hand upon the car and with their eyes upon the wheel in order that, with the other hand, the oak stick or sprag could be inserted between the spokes of the wheel, thereby blocking it and causing the cars to slow up or stop, all of which clearly and imperatively required that the master should use reasonable care in preserving the runway in a safe condition, which, judging from the evidence introduced in this case, it neglected and failed to do.

It can hardly be said that the condition was an ordinary condition pertaining to the business or the character of the work done. It was, on the other hand, an extraordinary condition, arising out of the change in the runway which has been referred to, and, so far as the evidence discloses, it does not appear that the plaintiff had any knowledge of the condition.

If the contention of appellee be correct upon the proposition that there is evidence to support the contention that the obstruction was of such a character that a knowledge of its condition must necessarily be imputed to the plaintiff, with the result that we should hold that he assumed the risk because of its obvious nature, we would point out that there is other evidence in the case to the effect that the obstruction was but two or, at most, three inches in height, and this conflict of evidence would certainly make it possible for at least two inferences to be

drawn, one which would impute a necessary knowledge to the plaintiff, and the other which would support him in his contention that he had not noticed the obstruction.

[4] In this connection it was held by this court in the case of Crawford v. Western Clay & Gypsum Products Co., 20 N. M. 555, 151 Pac. 238, that when the evidence is of such a character that the proper inferences to be drawn from it, as to the assumption of risk by the servant, is a question with respect to which different opinions may not unreasonably be formed, it must be submitted to the jury under proper instructions from the court.

Therefore, as we have indicated, it is our conclusion that the state of facts here in question did not constitute an ordinary risk, but an extraordinary one, resulting from the negligence of the master; and, as we have indicated, it not appearing that the servant knew of the condition, we conclude that the trial court was in error in directing a verdict for the defendant.

The judgment of the district court will therefore be reversed, and the cause remanded for a new trial.

PARKER, J., concurs.

ROBERTS, J., did not participate.