[No. 1679, July 22, 1915.]

CRAWFORD v. WESTERN CLAY & GYPSUM PRO-
DUCTS COMPANY.

### SYLLABUS BY THE COURT.

1. Where no exception is saved, in the court below, to the giving of alleged erroneous instructions and the refusal to give requested instructions, this court will not consider the same.

P. 558

2. When the evidence is of such a character that the proper inference to be drawn from it, as to the assumption of risk by the servant, is a question with respect to which different opinions may not unreasonably be formed, it must be submitted to the jury under proper instructions.

P. 559

Appeal from District Court, Lincoln County; Medler, Judge.

Action by Julia S. Crawford, administratrix of John W. Crawford, deceased, against the Western Clay & Gypsum Products Company. From a judgment for plaintiff, defendant appeals. Affirmed, and cause remanded for execution.

EDWIN MECHEM of Alamogordo, for appellant.

The court erred in refusing to instruct the jury for appellant. The deceased knew and comprehended the danger.

Reed v. Stockmeyer, 74 Fed. 186; Cole v. Chicago N. W. Ry. Co., 71 Wis. 114, 5 Am. St. R. 201.

The court erred in giving the sixth requested instruction.

The servant is not bound to comply with the orders of the superior and undertake work which he knows to be dangerous.

Lowe v. So. Ry. Co., — Am. St. R. 904.

SHERRY & SHERRY of Alamogordo and GEORGE SPENCE of El Paso, Texas, for appellee.

As to the assumption of risk, see 5 Thompson on Neg. secs. 5378, 5379.

The cause being fairly submitted to the jury on instructions fully covering the issues, it is not within the province of the court to ignore the verdict of the jury.

Railroad Co. v. Stout, 17 Wall. 663.

## OPINION OF THE COURT.

PARKER, J.—This is an action brought in the trial court by the widow of John W. Crawford, deceased, as administratrix of his estate. John W. Crawford came to his death in the cement and plaster mill operated by appellant. He had been engaged in the employment of the appellant as a calciner for about six years. On the last day of May, 1911, the deceased was directed by the superintendent of the cement mill to assist in replacing a belt which had become meshed in the lower friction pulley, a part of the machinery in the plant of appellant, which operated the hot pit elevator. The superintendent advised deceased that he, the superintendent, would go to the engine room, a distance of about 60 feet from the said pulley, and slow down the engine, and that deceased and his assistants should then loosen the said belt and replace it on its proper pulley. The superintendent decreased the speed of the engine, and deceased pulled and pushed on the belt, and the deceased was precipitated into a hot pit over which he had been working, and death immediately ensued. One arm was severed from the body of deceased and the head was bruised and torn. A friction clutch had been installed by appellant in this plant to throw out the lower friction pulley of the machinery operating the hot pit elevator, but it had been out of repair and not properly conditioned to perform its function for more than two years at the time of this occurrence. There were three methods by which the entangled belt could have been untangled and replaced on its proper pulley: First, by cutting the belt; second, burning the belt; or, third, by completely stopping the engine and the machinery in the plant. The last method was not adopted on account of the great expense it would incur, in the judgment of the superintendent of the cement mill.

The deceased was 69 years of age and in robust health at the time of the occurrence which resulted in his death, was a man of large experience in the line of his employment, had been so employed by defendant in the same ca-

pacity for 6 years, and had known the condition of the pulley for at least a year.

The complaint was framed upon the theory that the defendant was guilty of negligence in not providing safe machinery and a safe place to work. The answer was framed upon the theory that the deceased was guilty of contributory negligence and assumed the risk of the employment in which he was engaged. The trial resulted in a verdict and judgment in favor of plaintiff for $1,000.

[1] At the close of the testimony for the plaintiff, the defendant moved for an instructed verdict in its favor, which was refused. Thereupon the defendant offered evidence in its own behalf. Thereupon the court instructed the jury, of its own motion, gave some requested instructions offered by defendant, and refused others. Defendant complains of the instructions given by the court and of its refusal to give requested instructions.

A strange condition of the record, however, appears which precludes the court from examining these instructions and the questions involved, except one which will be hereafter noticed. It is this, no objection or exception was made or saved in the court below to the action of the court in this regard. The most that appears is a recital in the motion for a new trial that the defendant below excepted to the giving of certain instructions. But this is no evidence in this court of the fact that the exceptions were in fact taken. So far as appears, the court may have overruled the motion for a new trial for the very reason that no such exceptions were presented. It is true that counsel for plaintiff makes no point against the defendant in this regard, and argues, without objection, all of the questions presented by defendant. It nevertheless remains true that this court will examine no question not presented to the lower court, nor will it review the lower court's action in the absence of proper objection and exception in said court. See section 4506, Code 1915, where all of the New Mexico cases on this proposition are collected.

[**2**]    At the close of the plaintiff's evidence, defend-
ant moved for an instructed verdict in its favor as follows:

> "At this time the plaintiff has rested its case
> and stated that it had produced all of its evi-
> dence.    The defendant moves the court to in-
> struct the jury to return a verdict for the de-
> fendant upon the grounds:    (1) That the uncon-
> tradicted evidence of the plaintiff shows that the
> deceased, John W. Crawford, assumed the risk
> which resulted in his death, (2) That the evi-
> dence shows that if he was injured, as testified
> to and alleged, that the accident was the result
> not only of contributory negligence on his part,
> and assumed risk, but it was the result of the
> actions and negligence of a fellow servant.    And
> further on the theory or upon the ground that
> the testimony shows he was guilty of contribu-
> tory negligence.    The Court:    No, I will let this
> go to the jury.    Motion overruled.    Mr. Beise-
> ger:    Exception."

While no exception was saved to the refusal to give re-
quested instructions to find for the defendant, still we re-
gard this exception as sufficient to raise the question as to
whether it was the duty of the court to take the case from
the jury.

At this time the plaintiff had shown by one D. F. Wil-
liams, who was superintendent and clearly the vice prin-
cipal of the defendant, that the vice principal had ordered
the deceased to assist another man in releasing the belt
from the pulley; that he told them he would go to the en-
gine room and slow down the engine, which he did to a
rate of speed as slow as possible without stopping; that,
when the defendant took hold of the belt to release it, it
was necessary to go below the pulley and stand on a 2x4
timber which is over the hot pit; that deceased took hold
of the belt while the engine was running slowly and the
belt broke, killing deceased.    There was no evidence at
this time that the deceased had ever had experience in re-
moving belts from moving pulleys, although his experi-

ence in such employments was shown to have extended over a long period of years; nor was there any evidence as to the size of the belt.

Under such circumstances, it could not be said, as a matter of law, that the deceased was guilty of contributory negligence, or that he assumed the risk. In the first place, there is no evidence whatever of any negligence on the part of the deceased as to the manner in which he attempted to perform the duty of releasing the belt, and, so far as appears, he did so in the only manner possible under the circumstances. Whether the danger was so patent and imminent as that no person of ordinary prudence and discretion would expose himself to the same was a question of fact for the jury. We are aware that danger may be so patent and imminent as to require the court to say as a matter of law that no ordinarily prudent person would expose himself to the same, and, if he does, he necessarily assumes the risk of injury. But this case is not one of this class. Taking into consideration the doctrine that it is the primary duty of the servant to obey the master, and the fact that the servant was ordered to perform this service, and the character of the danger to which the servant was exposed, it was clearly a question for the jury to determine whether the danger was so patent and imminent as to require the servant to refuse to perform the service or otherwise to assume the risk. Both the master and the servant had equal knowledge of the conditions, it is true; but the danger was not certain and imminent, but was rather potential and contingent. Whether the deceased knew and appreciated the danger and nevertheless performed the service, or whether the conditions were such that he, as an ordinarily prudent man, must have known the danger, is a matter of fact about which minds of men might differ, and the question was for the jury.

The general doctrine upon this subject is stated as follows:

"Where, on an issue of assumption of risk by a servant who has sustained injuries, the facts are controverted, or such that different inferences

may be drawn therefrom, the question as to assumption of risk should be submitted to the jury under proper instructions from the court." 26 Cyc. 1478.

Mr. Labatt states the proposition as follows:

"In all the cases it is asserted or taken for granted that there are two situations in which the question whether the servant is chargeable with notice of the risk from which his injury resulted must be left to the jury to determine, and in which their findings with regard to that question are conclusive in a court of review: (1) Where the evidence is conflicting as to the material circumstances which are available for the purpose of determining whether the servant ought to have known of the risk. * * * (2) Where the evidence is of such a character that the proper inference to be drawn from it is a question with respect to which different opinions may not unreasonably be formed." 4 Labatt's Master and Servant (2d Ed.) § 1309.

The general principle governing such cases is plain, but its application is of considerable difficulty in many circumstances. Hence there are found in the cases exactly opposite views upon practically the same state of facts, as to when and when not it becomes a question of law for the court to determine whether the servant assumes the risk. But in this case there was no evidence of experience on the part of deceased with entangled belts around moving pulleys, although his long experience with machinery raised a probability of such experience; nor was there any evidence at the time the motion was made, nor even in defendant's testimony, that an ordinarily prudent man of like intelligence and experience must have known and appreciated the danger. The court was asked to declare, as a matter of law, that deceased must have known and appreciated the danger of the use of an instrumentality which danger is not within the range of the common knowledge and understanding of men. Lintott v. Nashua,

etc., Co., 69 N. H. 628, 44 Atl. 98, is a case quite similar in its facts to the case at bar, and it was held that the question as to assumption of risk was for the jury.   See, also, Morgan v. R. B. Lumber Co., 51 Wash. 335, 98 Pac. 1120, 22 L. R. A. (N. S.) 472, 478; Brown v. West Riverside Coal Co., 143 Iowa, 662, 120 N. W. 737, 28 L. R. A. (N. S.) 1260, 1266; Engelking v. Spokane, 59 Wash. 446, 110 Pac. 25, 29 L. R. A. (N. S.) 481, 485—for the application of the same doctrine to varying circumstances.

It is apparent that, at the time the motion for an instructed verdict in favor of the defendant was interposed, the court was unwarranted in granting the same and. was correct in refusing to do so.

At the close of the whole case, the defendant renewed its motion for an instructed verdict; but the court seems not to have acted upon it, and no exception was saved.

There being no error in the record, the judgment of the lower court will be affirmed, and the cause remanded to the district court for execution, and it is so ordered.

ROBERTS, C. J., and HANNA, J., concur.

### SYLLABUS BY THE COURT. ·

