354 P.2d 740

Jose C. PADILLA, Plaintiff-Appellee,

v.

M. O. WINSOR and N. O. Brane, as ancillary executors of the Last Will and Testament of E. C. Winsor, Deceased; and M. O. Winsor, Individually, Defendants-Appellants.

No. 6588.

Supreme Court of New Mexico.

July 30, 1960.

Rehearing Denied Sept. 9, 1960.

Robertson & Skinner, Raton, Krehbiel & Alsup, Clayton, for appellants.

·Robert A. Morrow, Raton, for appellee.

MOISE, Justice.

Plaintiff, Jose C. Padilla, sued in two counts for injuries allegedly suffered while he was employed as a ranch hand by E. C. Winsor and his wife, M. O. Winsor. E. C. Winsor, having died, M. O. Winsor and N. O. Brane, as ancillary executors of his estate, are joined as defendants with M. O. Winsor, individually.

In the complaint it is alleged that E. C. Winsor and wife, M. O. Winsor, were the operators of a ranch in Union County, New Mexico; that on or about September 1, 1955, the plaintiff, Jose C. Padilla, was employed to work on the ranch; that the employers agreed to furnish plaintiff all ranch equipment, including the necessary saddle horses, broken to ride; that, in fact, plaintiff was furnished a scary, unreliable, undependable, unpredictable and unsafe horse that would at times without warning and without apparent cause go into a bucking spell, all of which was known to E. C. Winsor and in this defendants were negligent; that on or about November 21, 1955, the plaintiff, while performing his duties, was thrown from one of the horses provided by E. C. Winsor, when the horse suddenly started bucking and threw him to the ground injuring him seriously and requiring medical and hospital care and expense, and causing "permanent partial disability from which he will never recover."

The defendants answered by way of denial of material allegations and pleaded the affirmative defenses of contributory negligence and assumption of risk.

The case was tried to a jury and resulted in a $5,000 verdict in favor of plaintiff. From the judgment entered pursuant thereto this appeal is prosecuted.

At the close of plaintiff's evidence on the trial, defendants moved for a directed verdict in their favor on the ground the plaintiff had failed to prove negligence, and on the further ground that the evidence showed plaintiff had assumed the risk and was contributorily negligent. This motion was overruled. Thereafter, at the close of the entire case, the motion was renewed and overruled. Also,· a motion for judgment

notwithstanding the verdict or for a new trial was timely filed setting up generally the same grounds and it was overruled by the court.

Error in overruling these various motions is complained of here. Thus is presented generally the question of the sufficiency of the proof to require submitting to the jury the issue of whether or not the Winsors were negligent, the burden of proof therefor being on plaintiff, and the additional question of whether the evidence presented an issue for the jury as to plaintiff having assumed the risk or being contributorily negligent, the burden of establishing the same being on defendants.

█ In passing upon questions such as are presented here, where the jury has considered the case and returned its verdict in effect finding negligence on the part of defendants and an absence of contributory negligence or assumption of risk by plaintiff, the court must view the evidence in the most favorable light to support the verdict, and before reversing must be convinced that the verdict cannot be sustained either by evidence or inferences therefrom. Chandler v. Battenfield, 55 N.M. 361, 233 P.2d 1047; Amaro v. Moss, 65 N.M. 373, 337 P.2d 948; Addison v. Tessier, 62 N.M. 120, 305 P.2d 1067; Adams v. Cox, 55 N.M. 444, 234 P.2d 1043.

Approaching the testimony with this rule in mind, we relate as briefly as possible what was proven, exclusive of the proof as to the injuries and damages suffered, these items not being material to this appeal.

In August, 1955, when plaintiff went to work for the Winsors he was 53 years of age and had been a rancher all his life including riding horses. Some time about August 15, 1955, he took a job at the Winsor ranch to do general ranch work. On September 1, 1955, he moved his family to the ranch, and they were furnished a place to live. The Winsors had two riding horses on the ranch, one named Elmer and one named Trigger. Trigger had been acquired and used as a saddle horse since 1952. Plaintiff was instructed to ride one of them one day and other the next, alternating them. At the time plaintiff went to work, he inquired about riding horses and was told there were two horses on the ranch and that they were gentle. Plaintiff told Mr. Winsor he had two horses that he was used to that he would like to bring over for his own use, and for which he would make no charge. Mr. Winsor indicated this would be satisfactory but nothing was ever done to bring the horses to the Winsor ranch even though several later requests to have it done were made by plaintiff's wife to Mrs. Winsor, the last of these requests being as late as the evening before the accident. Also, although Mr. Winsor had indicated plaintiff's horses could be brought for plaintiff's use, at a later time Mrs. Winsor stated that the two horses

there were adequate, and they did not have enough grass for additional animals. However, she also indicated the decision in this regard was not final.

From the time of his employment about August 15, 1955, to the date of the accident, November 21, 1955, the plaintiff rode both Elmer and Trigger almost daily, alternating them as per his instructions. He preferred Trigger because Elmer was prone to stumble, and he considered Trigger a better horse, gentle, and easier to handle if he had to be loaded into a pickup in the pasture.

Plaintiff testified concerning one incident of difficulty with Trigger prior to the date of the accident, and concerning Mr. Winsor's knowledge, as follows:

"Q. Mr. Padilla, now, about the horses, did you have occasion, in connection with your working with the particular horse in question, in cattle operations around the corral, and have an occasion in which that horse bucked and started to throw you? A. Yes, sir.

"Q. Prior to the accident we're talking about? A. Yes, sir.

"Q. Tell the jury about that. A. Well, one morning we was going to deliver cattle, and Mr. Boots, Harlan Boots, was there and another buyer, and I saddled the horses, the one that I used and Mr. Winsor, so Mr. Winsor

left and told me which direction to go, so when I took my horse out of the corral, that I get on him, he didn't want to go, so I just push him with my legs to make him go, and he didn't want to go so I just try to make him go and he try to started bucking and went right straight on to the corner of the corral and the barn and when I see that I didn't have no chance, I just jumped down.

"Q. And then what did you do? A. So I tie that horse there in the corral and went and in the saddle room and get my spurs, and when I put on my spurs, Mr. Harlan told me, 'you better bring that horse in the corral.' I told him, 'Yes, that's what I'm going to do' so I just put on my spurs and get the horse and in the corral and ride him, trying to make him straight up, so I ride him a little while there and then when I get ready, I tell Mr. Harlan Boots to open the gate and I went on and helped Mr. Winsor bring those cows.

"Q. Did you tell Mr. Winsor about your experience with the horse that morning and what the horse did? A. Yes, when we was driving the bunch I told Mr. Winsor that Trigger had throwed me down and we began to talk about him, and he said that he throwed him once, too, but I didn't pay much attention to the old man because Mr.

Winsor used to use just one spur, and I thought that he had catched the horse with a spur and that's what make him buck, so I didn't pay much attention that the horse was mean.

"Q. But Mr. Winsor did tell you that the horse had thrown him? A. Yes, one day that he and Severda was working cattle he said that horse started bucking without reason, but I kind of jumped Mr. Winsor that he had hooked him with a spur."

And on cross-examination he testified concerning this incident, as follows:

"Q. (By Mr. Skinner:) Before, when you say he bucked and threw you off, you were wearing your spurs when you first got on the horse that day? A. No.

"Q. You weren't? A. No.

"Q. You are sure? A. Why, sure, because when I get on the horse and didn't want to go, I just push him with my legs and he didn't want to go so I just climb in the corral and tie him in the corral and went and got my spurs, and when I ride him the second time, he sure he started bucking, and when he go to the corner of the corral, I jump off.

"Q. All right, you had your spurs on when he started bucking, right? A. Yes.

"Q. He wouldn't go at first so you got off and got your spurs and got on him and then you say he bucked for a few moments? A. Yes."

Nothing appears in the record indicating that Trigger was not gentle except only the incidents related above, and the occasion on November 21, 1955, when plaintiff testified he was riding him looking for a cow and had ridden some quarter to half a mile and this "horse was riding pretty good, suddently he just start bucking up the hill and when he turned back down the hill bucking with me, he throw (sic) me right flat on my back on the ground."

Are these facts sufficient upon which to base a finding of negligence and an absence of contributory negligence and no assumption of risk, or at least to require their submission to the jury for answer?

The rules to be applied in the trial of a case to determine if a question of negligence should be submitted to the jury or a verdict directed have been stated many times by this Court. In the case of American Ins. Co. v. Foutz and Bursum, 60 N.M. 351, 291 P.2d 1081, 1087, the following quotation was stated to pronounce the correct rule:

" 'Where minds of reasonable men might differ as to whether evidence adduced by plaintiff is sufficient to show negligence on part of defendant and proximate relationship thereof to injur-

ies complained of, question is one to be resolved by jury.' "

The rule is the same as to contributory negligence. See Olguin v. Thygesen, 47 N. M. 377, 143 P.2d 585, 591, where the following is stated:

· "The burden of showing contributory negligence is upon the defendant, and 'when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury' is the rule almost universally applied, and the one which we approved and applied in Padilla v. Atchison, T. & S. F. R. Co., 16 N.M. 576, 597, 120 P. 724, 729. See, also, Hogsett v. Hanna, 41 N.M. 22, 63 P.2d 540, and Russell v. Davis, 38 N.M. 533, 37 P.2d 536."

The rule was again stated and applied in Williams v. City of Hobbs, 56 N.M. 733; 249 P.2d 765. See also Sandoval v. Brown, 66 N.M. 235, 346 P.2d 551.

In the case of Crawford v. Western Clay & Gypsum Products Co., 20 N.M. 555, 151 P. 238, this Court pronounced a similar rule applicable on the question of assumption of risk as follows:

"When the evidence is of such a character that the proper inference to be drawn from it, as to the assumption of risk by the servant, is a question with respect to which different opinions may not unreasonably be formed, it must be submitted to the jury under proper instructions."

This is announced as the correct rule in 2 Shearman & Redfield on Negligence (Rev. Ed.1941) 579.

Thus it appears that the inquiry requiring an answer from us is—Can reasonable minds differ on the question of whether the Winsors were negligent and whether or not the plaintiff was contributorily negligent or assumed the risk? All of these questions were submitted to the jury by the trial court. If reasonable minds can differ on the question of primary negligence of the employers the case was properly submitted to the jury unless reasonable minds could not differ on the defenses. If they could not differ on the primary negligence question the court was in error in submitting the case to the jury; and again if only one conclusion was possible that the plaintiff had assumed the risks or was contributorily negligent, it was likewise error to submit the case to the jury.

▮▮ It is clear that the employer was obligated to furnish the plaintiff a reasonably safe place to work. Thompson v. Dale, 59 N.M. 290, 283 P.2d 623, and this includes the furnishing of a reasonably safe horse when the servant is required to ride a horse furnished by the master as part of his duties. Williams v. Hofer, 30 Wash.2d 253, 191 P.2d 306; Robb v. Gilmore, Tex.

Civ.App.1957, 302 S.W.2d 739; Nikolas v. Kirner, 247 Iowa 231, 73 N.W.2d 7; Warner v. Oriel Glass Co., 319 Mo. 1196, 8 S.W.2d 846, 60 A.L.R. 448.

Can we say that when the Winsors furnished plaintiff a horse that had once thrown Mr. Winsor and upon plaintiff coming to work told him the riding horses were gentle, all reasonable people would agree that there was no negligence present? We doubt it, and hold that a jury question was present as to whether defendants were negligent.

It would not be amiss at this point to mention that in this western country where the horse has played such a large part in its history as well as its development, we must be in position to judicially notice that horses no matter how gentle, with slight provocation, or without any known provocation, will sometimes shy, jump or even start to buck. This has been recognized concerning plow horses in Crosby v. Burge, 190 Miss. 739, 1 So.2d 504. We recognize the same rule as concerns riding horses. Plaintiff recognized it in a limited manner when he stated that all horses "are liable to hump up a little bit early in the morning, no matter how gentle they are." However, even though this be true we are nevertheless convinced the question of negligence was still for the jury.

Concerning the defense of assumption of risk we come to a similar conclusion.

The risks incident to employment have generally been denominated as "ordinary" and "extraordinary." The servant assumes all the ordinary risks of his employment. Van Kirk v. Butler, 19 N.M. 597, 145 P. 129, 133; Jones v. Adams, 56 N.M. 510, 245 P.2d 843. In the instant case ordinary risks would be risks of injury from riding a gentle horse furnished him—as, for example, if a gentle horse fell with him while he was riding.

In addition to the ordinary risks, the servant assumes the extraordinary risks, i. e., those risks resulting from the master's negligence and of which the servant has knowledge and full appreciation. Van Kirk v. Butler, supra; Jones v. Adams, supra. We would have an assumption of such a risk if Mr. Winsor had told plaintiff that Trigger was dangerous and unpredictable and plaintiff had asserted he was an expert with bucking horses and chose to ride him nevertheless. If at the time of the accident plaintiff had been riding Elmer, and he had been thrown because Elmer stumbled, it would be clear that plaintiff could not recover, since being fully aware of the horse's tendency in this regard and the dangers incident thereto, he clearly would have assumed the risks thereof.

However, it is not so clear where a horse supposedly gentle, suddenly bucks so as to throw an experienced rider, even though two previous incidents of bucking were

known to have occurred. Can it be said that the horse was known to be scary, jumpy, undependable, etc., because of these previous occurrences known to plaintiff, to such a degree that plaintiff assumed all risks incident to a later occurrence when riding the horse? At least to our minds, reasonable men might differ as to the answer to this question.

Concerning the question as to what extraordinary risks are assumed, and the basis for the rule, 2 Shearman & Redfield on Negligence (Rev.Ed.1941) 575, states the following:

"The exemption of masters from liability to servants for the master's negligence is founded, in most cases, upon the general doctrine as to contributory negligence. But it has been held, on due consideration, that such a risk, arising from the master's negligence, may be deliberately assumed without any want of care, irrespective of any negligence. To bring a case within this maxim the employee must know of the defect, appreciate the danger, and voluntarily assume the risk. He is presumed to know obvious risks and bound to take notice of patent defects. He does not assume the risk, at least as matter of law, of a latent danger of which he is unaware.

"The judicial dissent from this doctrine of the assumption of extraordinary risks, or risks caused by the master's negligence, if any, is so slight that it may be considered negligible. But confusion sometimes arises from inadequate statements of the doctrine. Some courts and text writers seek to import such assumption into the contract of service instead of considering it, as it should be, as a rule of universal application and independent of the relation of master and servant; in which latter relation, however, it receives its chief exposition because the circumstances and conditions there arising chiefly call for its application."

Shearman & Redfield also state at page 580 of Vol. 2 of their work on Negligence (Rev.Ed.1941), the following:

"The true rule, as nearly as it can be stated, is that a servant can recover for an injury suffered from defects due to the master's fault, of which he had notice, if under all the circumstances, a servant of ordinary prudence, acting with such prudence, would, under similar conditions, have been justified in continuing the same work under the same risk, but not otherwise. All the circumstances must be taken into account and not merely the isolated fact of risk."

See also the notes in 26 A.L.R. 871 and 42 A.L.R. 226.

Applying the foregoing rules to the instant case, can we say that reasonable

minds cannot differ as to whether plaintiff, knowing that the horse had bucked once with him on a cold morning, and that it had once thrown Mr. Winsor, but that otherwise the horse appeared gentle, acted as any ordinarily prudent person in continuing to use the horse furnished him in his employment? This is the converse of what we said concerning the question of the employers' negligence. Just as we conclude that knowledge by the employers that Trigger had bucked on two prior occasions did not necessarily establish his nature as a dangerous, undependable and unsafe horse so as to make them negligent as a matter of law; but that a jury question was presented, so plaintiff's knowledge of these same facts did not establish such character in the horse as to require a conclusion as a matter of law that plaintiff assumed the risks incidental to riding an undependable and unsafe horse, but again a question for determination by the jury was presented.

We are convinced that under all the facts here present it was for the jury to pass upon, and having done so under instructions free from objection, their verdict should not be overturned.

Although not argued in the briefs we would refer to the testimony concerning the continued requests addressed by Mrs. Padilla to Mrs. Winsor to have plaintiff's horses brought to the Winsor ranch for plaintiff's use, and that Mrs. Winsor kept putting off any definite decision in this regard. Under these circumstances it is generally held that the servant does not assume any risks resulting from his continuing to work and use the instrumentality about which he has complained and is seeking to have the master remedy. See 2 Shearman & Redfield on Negligence (Rev. Ed.1941) 598, where the following appears:

"The dependent position of servants generally makes it reasonable to hold any notice on their part sufficient, however timid and hesitating, so long as it plainly conveys to the master the idea that a defect exists, and that they desire its removal. * * *"

At least it should be clear that the evidence referred to would be material along with all other evidence to determine whether or not the risk had been accepted and assumed.

As indicated, the question of plaintiff's contributory negligence revolves around and is governed by the same rules of law, and our conclusion as to the defense of assumption of risk applies equally to the plea of contributory negligence.

The case of Gordon v. Hardgrove, 65 N. M. 162, 334 P.2d 545, although it involves injuries to a servant resulting from riding a horse furnished by the master, because of the difference in its facts from those here present, and the manner in which it was finally disposed of, is not considered of any assistance in the decision of the instant case.

Finding no error, the judgment of the trial court should be affirmed.

It is so ordered.

McGHEE, C. J., COMPTON and CARMODY, JJ., and JOHN R. BRAND, District Judge, concur.