Charles DEMAREST, Appellant,

v.

T. C. BATESON CONSTRUCTION COM-PANY, a corporation, G. K. Cheves, d/b/a Cheves Construction Company, Appellees.

GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORP., Ltd., Appellant,

v.

T. C. BATESON CONSTRUCTION COM-PANY, a corporation, G. K. Cheves, d/b/a Cheves Construction Company, Appellees.

Nos. 8357, 8404.

United States Court of Appeals Tenth Circuit.

Nov. 30, 1966.

Rehearing Denied Jan. 25, 1967.

Willard F. Kitts, Albuquerque, N. M. (William E. Snead, Arturo G. Ortega and Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., with him on brief), for appellants.

Frank H. Allen, Jr., Albuquerque, N. M. (Modrall, Seymour, Sperling, Roehl & Harris, Albuquerque, N. M., with him on brief), for appellees.

Before MURRAH, Chief Judge, SETH, Circuit Judge, and DOYLE, District Judge.

MURRAH, Chief Judge.

This diversity-negligence action by an employee of a construction subcontractor against the prime contractors to recover

damages for injuries suffered in a fall at the worksite presents the difficult task of rationalizing and applying the law of assumption of risk and contributory negligence as New Mexico sees it. At the close of the plaintiffs' case, the trial court directed a verdict for defendants on the ground that as a matter of law the injured plaintiff assumed the risk and was guilty of contributory negligence. This verdict also ran against the plaintiff-intervenor whose subrogation rights as workman's compensation carrier for the subcontractor-employer depended on the injured employee's case. We affirm the trial court.

Appellees Bateson Construction Company and G. K. Cheves (d/b/a Cheves Construction Company) were joint venturers and prime contractors for the construction of an FAA control center near Albuquerque, New Mexico. Appellant-Demarest was employed by the sheet metal subcontractor. Prior to the day of the fall he had worked for some time in the basement of the building; but on that fateful day he was sent to the attic area to assist in the installation of air conditioning units.

The floor of the attic was composed of a rigid decking of expanded metal mesh, suspended some 20–25 feet above the main floor. Running the length of this decking were five parallel gaps or openings, each about two feet wide and separated by uniform intervals. (In these openings the light fixtures were eventually to be placed.) Demarest complained to his foreman about the dangers posed by the openings and asked that they be covered; he also discussed them with his fellow workers and warned them to "watch out". To reach the attic Demarest crawled up a scaffold and through one of the openings. He proceeded to work, stepping back and forth across one of the openings in the process. Some 2½ to 3 hours later he fell. No one witnessed the accident, although one witness did observe him falling after he emerged from the opening. Demarest himself had no recollection of the events immediately preceding the fall and thus could not tell what caused it.

Demarest's complaint alleged that defendants had control of the premises; that they owed a duty to employees of independent subcontractors to provide a safe place to work; that the defendants installed the mesh decking, or permitted it to be installed; that they knew or should have known of the danger thereby created to workmen in the area; that they negligently failed to take reasonable precautions to guard against that danger; and that by reason of their negligence Demarest fell through one of the openings to his great injury. Defendants generally denied these allegations and asserted the affirmative defenses of assumption of risk and contributory negligence.

The case was tried on the theory alleged in the complaint that the defendant prime contractors owed the plaintiff employee of their subcontractor the duty to provide him a safe place to work and negligently breached that duty. As the case comes to us on appeal, we must assume the duty alleged and the negligent breach thereof. In this posture of the case we have no occasion to consider the nature and extent of the duty owed under New Mexico law by a prime contractor to an invitee-employee of its subcontractor, i. e. see Titan Steel Corp. v. Walton, 10 Cir., 365 F.2d 542, 546, 547.[1] The only question here is the correctness of the trial court's judgment holding as a matter of law that the plaintiff as-

---

1. In Titan we considered and delineated the legal difference between the duty of an employer to provide his employee a safe place to work and the duty of a prime contractor in control of premises. We held that Utah would follow the general law to the effect that a prime contractor in control of premises fulfills his obligation to the invitee-employee of a subcontractor by warning him of latent or hidden dangers on the premises of which he knows or ought to know and the employee does not. Implicit in this is the corollary that where the danger on the premises is obvious or known to the employee, no warning is required. And see Halepeska v. Callihan Interests, Inc., Tex., 371 S.W.2d 368, 378.

sumed the risk due to the defendants' negligence and was guilty of contributory negligence.

Courts have long struggled with contributory negligence, assumption of risk, and volenti non fit injuria (a third concept kindred to and sometimes called an alias for assumption of risk) as these doctrines apply in the case of an employee-invitee. As we have said in considering the law of another state, "An examination of only a small number of the cases which have dealt with these three principles leads one into a maze of confusion and contradiction, from which one emerges only with a conviction that the decisions are irreconcilable." Swift and Co. v. Schuster, 10 Cir., 192 F.2d 615, 617. Probably because of this "confusion and contradiction" a number of courts have very recently restricted the scope of affirmative defenses in cases of this type to contributory negligence. Chief Justice Weintraub recently said for his court that " * * * there is no reason to charge assumption of the risk in its secondary sense [as an affirmative defense] for something distinct from contributory negligence * * *. * * * if defendant is found to have been negligent, plaintiff is barred only if defendant carries the burden of proving contributory negligence, i. e., plaintiff's failure to use the care of a reasonably prudent man under all of the circumstances either in incurring the known risk or in the manner in which he proceeded in the face of that risk." Meistrich v. Casino Area Attractions, 31 N.J. 44, 155 A.2d 90, 96.[2]

But, despite what may well be the emerging general law in this area, our case is clearly governed by the law of New Mexico. In Tyler v. Dowell, Inc., 10 Cir., 274 F.2d 890, a non-master-servant case like this one, we were of the opinion that Rutherford v. James, 33 N.M. 440, 270 P. 794, 63 A.L.R. 237, restricted assumption of risk to master-servant cases. We were unclear, however, as to the difference between volenti non fit injuria, which New Mexico seemed to apply in non-master-servant cases and assumption of risk and contributory negligence. This situation, however, has been clarified by the recent cases of Reed v. Styron Const. Co., 69 N.M. 262, 365 P.2d 912, overruling Rutherford v. James, supra, and making assumption of risk expressly applicable in non-master-servant cases. Our task then is to determine according to New Mexico law the legal distinction, if any, between assumption of risk and contributory negligence as an affirmative defense to negligent conduct.

Plaintiff-appellants take the position that New Mexico has merged the defense of assumption of risk into contributory negligence; that applying the reasonable man test of contributory negligence and viewing the evidence most favorably to the plaintiffs, a case was made for the jury. They rely on three New Mexico cases. The first is Snodgrass v. Turner Tourist Hotels, 45 N.M. 50, 109 P.2d 775, 778, where the court in ruling that a charge on assumption of risk was improper absent evidence of knowledge of the risk, cites as authority § 466 of the Restatement of Torts. As we noted in Tyler v. Dowell, Inc., supra, this section refers to contributory negligence. It states in subsection (a) that contributory negligence may consist of "an intentional and unreasonable exposure * * * to danger created by the defendant's negligence of which danger the plaintiff knows or has reason to know * * *." Reliance is also placed on Jackson, et al. v. Southwest Public Serv-

**2.** See also Ritter v. Beals, 225 Or. 504, 358 P.2d 1080, 1088; Felgner v. Anderson, 375 Mich. 23, 133 N.W.2d 136, 153–154; Bulatao v. Kauai Motors, Ltd., Hawaii, 406 P.2d 887, 894; McConville v. State Farm Mutual Automobile Ins. Co., 15 Wis.2d 374, 113 N.W.2d 14, 16. And see Baltimore County v. State, 232 Md. 350, 193 A.2d 30, 35–37; Bullock v. Benjamin Moore and Co., Mo.App., 392 S.W.2d 10, 13; Anno. 82 A.L.R.2d 1218, § 9 at 1248ff. Cf. City of Tucson v. Holliday, 3 Ariz. App. 10, 411 P.2d 183, which contains a lucid and comprehensive treatment of the area at pp. 185–190. For recent cases applying assumption of risk, see cases cited in City of Tucson v. Holliday, supra, p. 186, footnote 3.

ice Co., 66 N.M. 458, 349 P.2d 1029, 1032–1033. There the court rejected the contention that the difference between assumption of risk and contributory negligence was "more philosophical than real"; but at the same time it stated that the main problem was whether the plaintiff was guilty of contributory negligence, and that plaintiff's knowledge of conditions and whether he assumed the risk would be considered under the heading of contributory negligence "although strictly it would be possible to consider them separately". Appellants most vigorously rely on Padilla v. Winsor, 67 N.M. 267, 354 P.2d 740, 744–745, where the court after quoting from 2 Shearman and Redfield on Negligence, p. 575 on the traditional elements of assumption of risk, quotes further from the same work to the following effect:

"The true rule, as nearly as it can be stated, is that a servant can recover for an injury suffered from defects due to the master's fault, of which he had notice, if under all the circumstances, a servant of ordinary prudence, would under similar conditions, have been justified in continuing the same work under the same risk. All the circumstances must be taken into account and not merely the isolated fact of risk." i. e. Id. 586.

The Padilla court could not find assumption of risk as a matter of law because reasonable minds could differ " * * * as to whether plaintiff * * * acted as any ordinarily prudent person in continuing to use the horse furnished him in his employment."

Appellants thus make a good case, and if Padilla were the last word, we would be inclined to accept their argument. But, the New Mexico court put its own interpretation on Padilla in Reed v. Styron, supra, reiterating the traditional test for assumption of risk: "We recent-

ly set forth in Padilla v. Winsor * * * the elements necessary to bar recovery under the doctrine of assumption of risk as: (1) the plaintiff must know of the defect, (2) appreciate the danger, and (3) voluntarily assume the risk. He is presumed to know and take notice of those risks and defects which are obvious, but he does not assume the risk, at least as a matter of law, of a latent danger of which he is unaware." Thus, if Padilla seems to have merged assumption of risk into contributory negligence, Reed seems to have re-established it as a separate defense.

This view is made manifest in the most recent case of Dempsey v. Alamo Hotels, Inc., N.M., 418 P.2d 58, 62 (decided on the day our case was argued), where the court treated contributory negligence and assumption of risk as separate defenses to negligent conduct and held the plaintiff barred as a matter of law by both. We are thus in agreement with the trial court's conclusion that " * * * a fair appraisal of the facts in that case [Padilla] will show that he [the plaintiff] didn't know and appreciate the danger to which he was exposed. Regardless of what may have been quoted in that case, I don't think the New Mexico Court has gone further than that."

Applying the test of Reed and Alamo, there can be no doubt that Demarest knew of the danger posed by the openings in the mesh decking. His own testimony demonstrates this beyond question.[3]

Conceding that Demarest knew of the danger, appellants contend he did not fully appreciate it because he was not aware how difficult it was to see the openings when viewed from above. They refer to testimony that Demarest worked most of the 2½ to 3 hours along one particular opening. They argue that a jury could reasonably infer that he did not walk the length or width of the attic, and

---

3. On cross examination Demarest testified as follows:

"Q. You observed that there were five open areas running the length of the building, is that correct? A. Yes.

Q. Then you climbed up the scaffold and actually came up through one of these openings to get up on top? A. Yes.

Q. Now, when you got up there, I assume, since you are an experienced sheet

thus did not experience prior to his assuming the risk the "wave" or "hypnotic" effect of which other witnesses testified. While Demarest may not have experienced exactly the same effect referred to by the other workers, his own testimony indicates full appreciation of the danger.[4]

Appellants next argue that Demarest's assumption of the known and appreciated risk was not voluntary because he was economically coerced into assuming it, i. e. he either had to work in the attic or "go home". It may be conceded that he was under the necessity of assuming the risk of his employment or quitting.[5] Even so, as we read New Mexico law, it does not recognize economic coercion as having any bearing on the question of voluntariness in a non-master-servant situation. In master-servant cases the general rule in this country seems always to have been that economic coercion does not make a servant's act involuntary. See 2 Shearman and Redfield, p. 589; Prosser on Torts, 3rd ed., p. 467; Hallstein v. Pennsylvania R. Co., 6 Cir., 30 F.2d 594, 596. The rule has been ameliorated, however, when the servant complains of the dangerous condition and relies upon the master's promise to repair. See Schmidt v. Southwestern Brewery and Ice Co., 15 N.M. 232, 107 P. 677, 678. Indeed, Padilla seems to have embraced an even broader amelioration of the rule by recognizing that " * * * the servant does not assume any risks resulting from his continuing to work and use the instrumentality about which he has complained and is seeking to have the master remedy." Id., 354 P.2d 740, 745.

metal man, that you looked around, observed what was up there, is that correct? A. Yes.

Q. And from climbing up through the hole and looking around in this attic area, you could see these holes there, could you not? A. Yes.

Q. So there is no question that you knew they were there, is there? A. No.

\* \* \* \* \* \*

Q. The units you were working on were actually over the trough in this area, is that right? A. I believe so.

Q. As you were working, you had to step back and forth across this trough, is that correct? A. Yes.

Q. Sometimes you left your tools on one side or the other; you had to walk back and forth? A. Yes.

Q. Actually, you even discussed these openings up there with your fellow workers, didn't you? A. Yes.

Q. And gave warnings to watch out, is that correct? A. Yes.

Q. And, as I understand the last question Mr. Kitts asked you, you even complained about them being there and wanted someone to cover them over, is that correct? A. Yes.

Q. So there is no question that you realized the openings were there is that right? A. No.

Q. There is no question you realized that they were a danger there, is that right? A. Yes.

Q. And there is no question that you realized you had to watch what you were doing up there * * * ? A. Yes, sir."

4. On direct examination Demarest testified as follows:

"Q. All right. Mr. Demarest, what was the visibility up there in that deck on this mesh? A. It was rather bad. It was a large wire mesh and you could easily see the floor below.

Q. Through the wire mesh? A. Through the wire mesh, yes.

Q. Did you have any difficulty seeing the spaces? A. Yes, If you looked at an angle, they kind of blended in with everything else."

5. "Q. You climbed up through the scaffold, observed the condition up there, and then of your own free will remained up there for two hours and a half before your fall, is that right? A. Yes, sir.

"Q. So then there is no question that you observed what you say is a dangerous condition prior to the time you fell, is that correct? A. Yes.

Q. You went up there voluntarily; nobody forced you up there, isn't that correct?

Mr. Kitts: Objection. I think questions as to 'voluntariness' and 'free will' smack of legal questions.

The Court: No. The objection will be overruled. We'll find out why he went up there.

A. They didn't force you to go, but I mean the work was there. If you wanted to work, that's where you had to go.

Q. You could have gone down if you had wanted to, couldn't you? A. Yes, you could have gone home, I guess."

While there was evidence in our case that the plaintiff had complained to his foreman about the dangerous condition and his foreman in turn complained to the defendants' foreman, there is no evidence whatsoever that the plaintiff continued to work under the dangerous condition in reliance upon the defendants' promise to remedy it. But, more importantly, this is not a master-servant case as was Padilla. The defendants in this case had no power to coerce this plaintiff to do anything. They did not hire nor could they fire. There was no element of economic coercion.

But, quite apart from the rule on voluntariness when economic coercion is exerted by a master against his servant, Restatement of Torts 2d, § 496E, dealing with the necessity of voluntary assumption, states a rule seeemingly applicable in non-master-servant situations, i. e. " * * * The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to * * * exercise or protect a right or privilege of which the defendant has no right to deprive him." Id. § 496E(2) (b). Comments c and d and the illustrations thereunder indicate a disposition to resort to the reasonable man test for determining whether an employee in Demarest's situation voluntarily assumed the risk. And see Seelbach v. Mellman, 293 Ky. 790, 170 S.W. 2d 18; Cf. Denham v. Steamer Avalon, Ky., 261 S.W.2d 291, 292. If the reasonable man test is added to the element of voluntariness in the defense of assumption of risk, the question arises whether that defense is thereby merged into the defense of contributory negligence.

However that may be, we think the most recent decision of the New Mexico Supreme Court in Dempsey v. Alamo Hotels, Inc., supra, a non-master-servant case, plainly indicates an indisposition to embrace the § 496E reasonable man test of voluntariness in a case of this kind. In Alamo the plaintiff hotel guest was under the necessity of assuming the known risk of showering in a slick bathtub without the protection of a bath mat or foregoing the privilege of using a convenience for which he had paid. The court sustained a summary judgment on the defenses of contributory negligence and assumption of risk tersely stating on the assumption of risk defense that "The law does not permit recovery by one who is injured as a result of his voluntary exposure to a known and appreciated danger due to the negligence of another." Id. 62. Significantly, it relied on the traditional elements of assumption of risk as stated in Restatement of Torts 2d, §§ 496A and C without reference to § 496E. From this we must conclude that the reasonable man test explicated in § 496E(2) (b) is inapplicable in New Mexico in determining whether a plaintiff-employee in a non-contractual case voluntarily assumed the risk of danger due to the negligence of the defendant.

■ The New Mexico trial judge was undoubtedly aware of the traditional reluctance of that state's courts to declare assumption of risk as a matter of law. It may also be assumed that he was mindful that each case must stand on its own feet, i. e. see Thompson v. Dale, 59 N.M. 290, 283 P.2d 623, 631; and that New Mexico has not hesitated to rule on the defense as a matter of law when the facts seem to admit of no other reasonable conclusion. See Alexander v. Los Cerillos Gold and Silver Mining Co., 3 P. 735; Jones v. Adams, 56 N.M. 510, 245 P.2d 843; Bogart v. Hester, 66 N.M. 311, 347 P.2d 327; Dempsey v. Alamo Hotels, Inc., supra. Viewing the facts and applicable law in this light, we certainly cannot say that the trial court's ruling on the assumption of risk was clearly erroneous. In this posture we do not reach the court's separate ruling on the defense of contributory negligence.

The judgment is affirmed.